Theodore SAMET and Wife, Charlotte
Samet, Plaintiffs,

v.

UNITED STATES of America,
Defendant,

v.

Harry ROCKWELL, Trustee, F. K. Wilkins, a/k/a F. Kent Wilkins, and GSW Hosiery Corporation, Third-Party Defendants.

No. C–65–G–63.

United States District Court
M. D. North Carolina,
Greensboro Division.

June 11, 1965.

Harry Rockwell, Greensboro, N. C., for plaintiffs and third-party defendants.

William H. Murdock, U. S. Atty., Greensboro, N. C., Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, and Fred B. Ugast and Paul T. O'Donoghue, Attys., Dept. of Justice, Washington, D. C., for defendant.

EDWIN M. STANLEY, Chief Judge.

The plaintiffs, Theodore Samet and wife, Charlotte Samet, instituted this civil action against the defendant, United States of America, seeking to remove clouds on the title to certain real property allegedly owned by the plaintiff, Charlotte Samet. The defendant, United States of America, in addition to denying that the plaintiff, Charlotte Samet, is entitled to the relief sought, counter-claimed against the plaintiff, Theodore Samet, for income taxes in the sum of $993,512.51, and seeks a foreclosure of its tax lien against the subject real property. Upon motion of the defendant, the third-party defendants were made parties for the reason that their presence was necessary for a complete adjudication of its asserted counterclaim. In reply to the defendant's counterclaim, the plaintiff, Charlotte Samet, alleges a cross-claim against the defendant for the fair market value of her separate property seized and sold by the defendant.

The case was tried by the Court without a jury. Practically all of the material facts were stipulated, and the actual trial was confined to testimony as to the value of certain real estate and personal property on specified dates, and the introduction into evidence of stipulations and exhibits. At the conclusion of the trial, the parties were afforded an opportunity to file requests for findings of fact and conclusions of law, and briefs in support of their respective positions.

The requests and briefs having been received, the Court, after considering the pleadings and evidence, including the exhibits and stipulations, and the briefs and oral argument of counsel, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

FINDINGS OF FACT

1. The plaintiffs are citizens and residents of Dade County, Florida. The third-party defendants, Harry Rockwell and F. K. Wilkins, are citizens and residents of Guilford County, North Carolina, and the defendant, GSW Hosiery Corporation, is a North Carolina corporation with its principal place of business in Alamance County, North Carolina.

2. This action involves the respective rights of the parties in a parcel of real property situated in Morehead Township, Guilford County, North Carolina, and described in the public records as follows:

"Being all of lots Nos. Four (4), Five (5), Six (6), Seven (7) and Eight (8) of the subdivision known and designated as the W. L. Trotter subdivision on the High Point Road, said plat being recorded in the Office of the Register of Deeds of Guilford County, North Carolina, in book #8, page 141."

3. There is of record in the Office of the Register of Deeds of Guilford County, North Carolina, a quitclaim deed to the above-described property from the plaintiff, Theodore Samet, to the plaintiff, Charlotte Samet, dated September 24, 1959, and recorded on the same date in the Office of the Register of Deeds of Guilford County, North Carolina, in book 1863, at page 378.

4. The plaintiff, Theodore Samet, was the owner of record of said property in fee simple from August 4, 1942, to September 24, 1959, the date on which the aforementioned quitclaim deed was placed on record.

5. On August 8, 1949, assessments of federal income tax liabilities for the years 1941 through 1947 were made against the plaintiff, Theodore Samet, totaling in excess of $1,130,000.00. Notices of the liens securing these liabilities upon all property and rights of property belonging to Theodore Samet were filed of record with the Register of Deeds of Guilford County on August 16 and August 23, 1949.

6. On August 8 and November 18, 1949, assessments of federal income tax liabilities for the year 1948 were made against the plaintiffs, Theodore Samet and Charlotte Samet, jointly, totaling approximately $20,000.00. Notices of liens securing these liabilities upon all property and rights of property belonging to Theodore and/or Charlotte Samet were filed of record with the Register of Deeds of Guilford County on August 16 and August 23, 1949, and on January 18, 1950.

7. The joint tax liabilities of the plaintiffs, Theodore and Charlotte Samet, for the years 1948, 1949 and 1950 were satisfied in full by credits applied on and before September 7, 1954.

8. On March 30, 1954, the real property in question was seized on behalf of the defendant, United States of America, by the then District Director of Internal Revenue for the District of North Carolina under warrants of distraint issued against the rights of Theodore Samet individually, with respect to his tax liabilities for the years 1943 through 1947, and issued against the rights of Theodore and Charlotte Samet jointly, with respect to their tax liabilities for the year 1948.

9. Pursuant to the aforementioned warrants of distraint, the District Director caused the subject real property to be sold at public auction on April 23, 1954, at which time one Charles Swaringen and wife, Lucy Swaringen, became the highest bidder for the sum of $3,000.00. On the same date, a certificate of sale of the property was issued by the District Director to the purchasers.

10. On April 22, 1955, the property was redeemed from the aforementioned sale by the plaintiff, Charlotte Samet, upon the payment of the sum of $3,600.00 to the District Director for the benefit of the purchaser, Lucy Swaringen, survivor of Charles Swaringen. Charles Swaringen died between the date of the sale on April 23, 1954, and the date the property was redeemed by the plaintiff, Charlotte Samet, on April 22, 1955.

11. An entry was made upon the records of the District Director to reflect the redemption of the property by the plaintiff, Charlotte Samet, but no deed for the interest of Theodore or Charlotte Samet was ever issued by the District Director to Lucy Swaringen, or to any other person claiming through her.

12. By three written instruments, all dated August 31, 1956, the plaintiffs submitted to the Commissioner of Internal Revenue the following offer to compromise the assessed liabilities for income taxes, penalties and interest for the years 1941 through 1950, of Theodore Samet, individually, and of Charlotte Samet as transferee of Theodore Samet:

(a) The first of these written instruments was executed by both Theodore Samet and Charlotte Samet on Treasury Form 656(C), and submitted an offer to pay the sum of $65,500.00 in compromise settlement of the assessed tax liabilities therein specified, to be paid as follows: $60,000.00 at the time of the submission of the offer and the remaining $5,500.00 in five annual installments

of $1,100.00 each, commencing one year after acceptance of the offer. The offer contained the following pertinent provision:

"As a part of this offer, it is agreed that upon notice to the proponent of the acceptance of this offer in compromise of the liability aforesaid, the proponent shall have no right, in the event of default in payment of any installment of principal or interest due under the terms of the offer, to contest in court or otherwise the amount of the liability sought to be compromised, and that in the event of such default the Commissioner of Internal Revenue, at his option, (1) may proceed immediately by suit to collect the entire unpaid balance of the offer, or (2) may disregard the amount of such offer and apply all amounts previously paid thereunder against the amount of the liability sought to be compromised and may, without further notice of any kind, assess and/or collect by distraint or suit (the restrictions against assessment and/or collection being hereby specifically waived) the balance of such liability."

(b) The second of these written instruments was likewise executed by Theodore Samet and Charlotte Samet and was a collateral agreement to the aforementioned offer in compromise. This collateral agreement, after reciting that, effective upon the acceptance of the offer in compromise by the Commissioner of Internal Revenue, Tax Court proceedings bearing docket numbers 38493 and 38494, relating to the alleged liability of Charlotte Samet as transferee of Theodore Samet, and the alleged liability of Theodore and Charlotte Samet as transferees of Theodore Samet, would be disposed of on the basis of stipulations reflecting (1) no transferee liability on behalf of the petitioners in said Tax Court proceedings, and (2) that certain sums of money collected from Charlotte Samet and Theodore Samet under jeopardy assessments of their alleged liability as transferees of Theodore Samet would result in overpayments being scheduled in behalf of Charlotte Samet and Theodore and Charlotte Samet, provided as follows:

"NOW THEREFORE, in further consideration of the acceptance of the aforesaid offer in compromise submitted by Theodore and Charlotte Samet, the parties of the first part hereby waive any right they may have to the refund of any monies collected from them jointly or severally as transferees of Theodore Samet and hereby expressly agree that upon the acceptance of the aforesaid offer in compromise any monies collected from them as transferees of Theodore Samet may be applied without notice of any kind to the individual income tax liabilities of Theodore Samet for any or all of the taxable years 1941 through 1950."

(c) The third of these written instruments was executed by Theodore Samet alone, and offered as additional consideration for the acceptance of the offer in compromise the payment of a percentage of the annual income of Theodore Samet, in excess of $7,000.00 per year, for the calendar years 1956 to 1965, inclusive. This collateral agreement, in addition to specifying the percentages of annual income to be paid by Theodore Samet in addition to the amount of $65,500.00 specified in the original offer of compromise, contained the following pertinent provisions:

"(3) That the annual payments provided for in the foregoing paragraphs shall be paid to the District Director of Internal Revenue, Greensboro, North Carolina, without notice from him, on or before the fifteenth day of the fourth month next following the close of the calendar or fiscal year, such payments to be accompanied by a sworn statement which shall refer to this agreement and set forth the annual income computed in accordance herewith. In the event the annual income is insufficient to require a payment un-

der the terms of this agreement, the said party of the first part shall, nevertheless, furnish the District Director of Internal Revenue with a statement of the income for the preceding calendar or fiscal year. All books, records, and accounts will be open at all reasonable times for inspection to verify the income set forth in the statement.

\* \* \* \* \* \*

"(5) That the default agreement and the waiver of the statute of limitations on assessment and collection as contained in the Form 656–C on which the aforesaid offer is submitted are also applicable in the event any provision of this agreement is not carried out in accordance with its terms.

"(6) That upon the acceptance of the aforesaid offer in compromise, the liens pertaining to the jeopardy assessments made against \* \* \* Charlotte Samet, and Theodore and Charlotte Samet as transferees of Theodore Samet, shall be released and cancelled of record.

"(7) That upon the acceptance of the aforesaid offer in compromise and the payment of all amounts called for therein, all liens pertaining to the original assessments made against Theodore Samet individually and those made against Theodore Samet and Charlotte Samet jointly for the years 1941 through 1950 shall be released and cancelled of record."

13. The offer in compromise, as embodied in the three written instruments referred to in the preceding paragraphs, was accepted by the Commissioner of Internal Revenue on behalf of the defendant, United States of America, on January 17, 1957.

14. Following the acceptance of the aforementioned offer in compromise by the Commissioner of Internal Revenue, Tax Court proceedings numbers 38493 and 38494 were disposed of upon the entry therein of stipulations and decisions.

15. In docket number 38493, in which Theodore Samet and Charlotte Samet were the petitioners, the decision was entered on February 4, 1957, and provided as follows:

"Pursuant to the written stipulation of settlement signed by the petitioners and counsel for respondent in the above-entitled case, and filed with the Court on January 17, 1957, at Washington, D. C., it is

ORDERED and DECIDED: That there is no liability on the part of these petitioners as transferees of assets of Theodore Samet, Greensboro, North Carolina, transferor, for income and victory tax, or Section 293(b) (IRC 1939) addition to the tax, due from the said transferor for the taxable year 1943; and it is

FURTHER ORDERED AND DECIDED: That there is an overpayment in income tax for the year 1943 in the amount of $74,796.68, of which amount $8,397.00 was paid within two years before the mailing of the notice of deficiency, and $66,-399.68 was paid after the mailing of the notice of deficiency."

16. In docket number 38494, in which Theodore Samet was the sole petitioner, the decision was entered on February 5, 1957, and provided as follows:

"Pursuant to the written stipulation of settlement signed by the petitioner and counsel for respondent in the above-entitled case, and filed with the Court on January 17, 1957, at Washington, D. C., it is

ORDERED and DECIDED: That there is no liability on the part of this petitioner as a transferee of assets of Theodore Samet, Greensboro, North Carolina, transferor, for income tax or Section 293(b) (IRC 1939) addition to the tax due from the said transferor for the taxable year 1944; and it is

FURTHER ORDERED AND DECIDED: That there is an overpayment in income tax due to the petitioner for the taxable year 1944, in

the amount of $4,392.55, of which $1,116.69 was paid within two years before the mailing of the notice of deficiency, and $3,275.86 was paid after the mailing of the notice of deficiency."

17. Following the entry of the decisions of the Tax Court, all recorded liens with respect to transferee assessments were released of record in accordance with the provisions of Paragraph 6 of the collateral agreement executed by Theodore Samet on August 31, 1956.

18. On January 25, 1962, Theodore Samet completed payment of the sum of $65,500.00 as provided in the original offer in compromise (Form 656–C) executed by Theodore Samet and Charlotte Samet on August 31, 1956.

19. During the year 1956, Theodore Samet had annual income sufficient to require him to make a payment in some amount to the District Director of Internal Revenue under the provisions of the collateral agreement executed by him on August 31, 1956. However, at no time since the acceptance of the offer in compromise on January 17, 1957, has Theodore Samet ever tendered or made any payment under said collateral agreement.

20. Upon the completion of the payment of $65,500.00 by Theodore Samet on January 25, 1962, the District Director of Internal Revenue, acting on behalf of the defendant, United States of America, refused, and continues to refuse, to release and cancel of record the tax liens against Theodore Samet, as provided in Paragraph 7 of the collateral agreement executed by Theodore Samet on August 31, 1956.

21. The joint tax liabilities of Theodore and Charlotte Samet for the years 1948, 1949 and 1950 having been satisfied in full in 1954, there were no tax liens in fact outstanding against any property interests of Theodore Samet and Charlotte Samet with respect to such liabilities at the time of acceptance of the offer in compromise on January 17, 1957, and such liabilities were not in-volved in any manner under the terms of said offer in compromise.

22. On March 11, 1963, the Acting Commissioner of Internal Revenue gave notice by letter to the plaintiffs that the compromise agreement was terminated, citing the right of the United States of America to terminate the agreement under the default provision in the original offer in compromise (Form 656–C), and incorporated by reference in Paragraph 5 of the collateral agreement executed by Theodore Samet on August 31, 1956.

23. Theodore Samet currently owes the United States of America a balance of $993,512.51, plus accrued interest as provided by law, for individual income taxes, penalties and interest with respect to the taxable years 1941 through 1947. This balance takes into account and gives credit for all sums heretofore paid by or collected from Theodore Samet on said income tax liability, or paid by or collected from anyone on his behalf.

24. The only encumbrances of record against the real property described in Paragraph 2 hereof, in addition to the federal tax liens here at issue, and the later tax liens not at issue, are as follows:

(a) Deed of trust dated April 22, 1955, in the amount of $3,600.00 from Theodore and Charlotte Samet to Robert B. Lloyd, Jr., as trustee for F. K. Wilkins, as recorded in Book 1606, at Page 218 in the Office of the Register of Deeds of Guilford County, North Carolina.

(b) Deed of trust dated July 18, 1961, in the amount of $13,000.00, from Theodore and Charlotte Samet to Harry Rockwell, trustee for F. K. Wilkins, as recorded in Book 1986, at Page 85, in the Office of the Register of Deeds of Guilford County, North Carolina.

(c) Deed of trust dated August 9, 1961, in the amount of $13,300.00, from Theodore and Charlotte Samet to Harry Rockwell, trustee for GSW Hosiery Corporation, as recorded in Book 1989, at Page 597, in the Office of the Register of Deeds of Guilford County, North Carolina.

(d) Judgment in favor of the North Carolina Commissioner of Revenue against Theodore Samet in the amount of $138,709.43, recorded on December 12, 1951, with respect to State income taxes for the years 1941 through 1948.

(e) Certificate of tax liability recorded by the North Carolina Commissioner of Revenue against Theodore Samet on February 22, 1954, in the amount of $306.94, with respect to State income taxes for the year 1952.

25. Prior to the execution of the offer in compromise by Theodore and Charlotte Samet on August 31, 1956, certain personal property owned by Charlotte Samet individually, and certain parcels of real property, the record title to which was in the name of Theodore and Charlotte Samet jointly, were sold under warrants of distraint and the proceeds of the sales applied to the tax liability of Theodore Samet. Additionally, before the submission of the offer in compromise, certain funds or monies of Theodore and Charlotte Samet were collected and applied, by virtue of levies upon third parties, to the tax liabilities of Theodore and Charlotte Samet. All of the real and personal property so levied upon and sold had a value at the time of its seizure in excess of that received at the distraint sale, and has a present market value greatly in excess of the value at the time of its seizure and sale.

26. The claim of the defendant, United States of America, against the real property in question is based upon the unpaid tax liability of Theodore Samet in the amount of $993,512.51, plus accrued interest, for individual income taxes, penalties and interest with respect to the taxable years 1941 through 1947, which amount is included in the notices of liens upon all property and rights of property belonging to Theodore Samet filed of record with the Register of Deeds of Guilford County on August 16 and August 22, 1949.

## DISCUSSION

Upon the foregoing facts, largely undisputed, the plaintiffs and third-party defendants, all represented by the same counsel, contend that the redemption of the subject property by Charlotte Samet exhausted same as a source for the satisfaction of the tax liens under which it was sold to the same extent as if a deed had been made to the tax sale purchaser. Even if the title to the property did not pass to Charlotte Samet by reason of the redemption, she urges that, since the defendant violated its agreement to cancel of record all liens pertaining to the original assessments made against Theodore Samet, the Court should declare that the property is free of those liens. In the alternative, it is contended that if the federal tax liens against Theodore Samet are still valid and subsisting, and the tax sale and subsequent redemption of the property by Charlotte Samet did not relieve some of the burden of the liens, Charlotte Samet should be entitled to recover of the defendant all sums collected from the sale of her separate property. This is true, it is argued, since the stipulated decision of the Tax Court adjudged that there was no liability on the part of either Theodore or Charlotte Samet as transferees of the assets of Theodore Samet.

The defendant, on the other hand, contends that Charlotte Samet did not acquire title to the subject realty as a result of her redemption, and that the tax liens against Theodore Samet have remained in full force and effect to the extent of the balance presently due and owing in the sum of $993,551.12, plus interest. The defendant further contends that said liens should be enforced against the subject property and be given first priority, except for the equitable lien of Charlotte Samet representing the amount paid in redemption, plus interest, together with such other interest or right she may have originally possessed in the property which qualified her as a proper party to redeem.

Unfortunately, in resolving the conflicting contentions of the parties, the Court has little to guide it other than the provisions of the federal redemption

statutes,[1] and decisions relating to general theories and concepts underlying the redemption of land from tax sales.

We first turn to the redemption statutes to determine whether Charlotte Samet had a right to redeem the property, and if so the legal effect of the redemption. Under 26 U.S.C. § 3702(b) (1), the owner of any real estate sold pursuant to warrants of distraint, "or any person having any interest therein, or lien thereon," shall be permitted to redeem the property at any time within one year after the sale by paying the amount paid at the sale by the purchaser, and interest thereon at the rate of 20 per cent per annum. Since Theodore Samet was the sole record owner of the property from August 4, 1942, until September 24, 1959, on which date a quitclaim deed from Theodore Samet to Charlotte Samet was recorded, Charlotte Samet was required to have some interest in the property, or lien thereon, to qualify her as a person entitled to redeem it from the tax sale. The only interest she claimed in the property was an inchoate right to dower.[2] Since she possessed such an interest, she clearly had the right to

---

1. Internal Revenue Code of 1939:
   "§ 3702. REDEMPTION OF REAL ESTATE.
   &ast; &ast; &ast; &ast; &ast;
   (b) *After Sale.*
   (1) *Period.* The owners of any real estate sold as aforesaid, their heirs, executors, or administrators, or any person having any interest therein, or a lien thereon, or any person in their behalf, shall be permitted to redeem the land sold, or any particular tract thereof, at any time within one year after the sale thereof.
   (2) *Price.* The land or tract aforesaid shall be permitted to be redeemed upon payment to the purchaser, or in case he can not be found in the county in which the land to be redeemed is situated, then to the collector of the district in which the land is situated, for the use of the purchaser, his heirs, or assigns, the amount paid by the said purchaser and interest thereon at the rate of 20 per centum per annum.
   &ast; &ast; &ast; &ast; &ast;
   (26 U.S.C. § 3702(b)).

   § 3703. CERTIFICATE OF PURCHASE.
   &ast; &ast; &ast; &ast; &ast;
   (b) *Real Estate Purchased by Others.* Upon any sale of real estate, as provided in section 3701, and the payment of the purchase money, the officer making the seizure and sale shall give to the purchaser a certificate of purchase, which shall set forth the real estate purchased, for whose taxes the same was sold, the name of the purchaser, and the price paid therefor.
   (26 U.S.C. § 3703(b)).
   § 3704. DEEDS OF SALE.
   &ast; &ast; &ast; &ast; &ast;
   (b) *Real Estate Purchased by Others.* If the said real estate be not redeemed in the manner and within the time provided in section 3702, the said collector or deputy collector shall execute to the said purchaser, upon his surrender of said certificate, a deed of the real estate purchased by him as aforesaid, reciting the facts set forth in said certificate, and in accordance with the laws of the State in which such real estate is situate upon the subject of sales of real estate under execution.
   (c) *Legal Effect.*
   (1) *As Evidence.* The deed of sale given in pursuance of this section shall be prima facie evidence of the facts therein stated; and
   (2) *As Conveyance of Title.* If the proceedings of the officer as set forth have been substantially in accordance with the provisions of law, such deed shall be considered and operate as a conveyance of all the right, title, and interest the party delinquent had in and to the real estate thus sold at the time the lien of the United States attached thereto."

2. Prior to July 1, 1960, every married woman, upon the death of her husband intestate, or in case she dissented from his will, was entitled by virtue of § 30–5, General Statutes of North Carolina, to an estate for life in one-third in value of all lands wherein her husband was seized during the coverture. However, effective July 1, 1960, this statute was repealed, and since that time the interest of a surviving spouse of an intestate, or the. surviving spouse of one who dissents from the will of a testator, has been governed by § 29–30, General Statutes of North Carolina.

protect the interest by redeeming from the sale.[3]

■ Having redeemed the property, Charlotte Samet argues that any reasonable statutory construction requires the conclusion that she acquired a right to the property at least equal to the right which would have accrued to the tax sale purchaser. This argument is based on the premise that logic and reason demand a finding that Congress never intended that a person redeeming from a tax sale be placed in a less favorable position than the tax sale purchaser. This argument ignores recognized legal principles relating to the redemption of property from a tax sale, and pertinent provisions of the federal redemption statutes. The legal effect of the redemption of land from a tax sale is stated in 85 C.J.S. Taxation § 886, as follows:

"Redemption creates no rights in the land. It restores the owner to his title as it stood before the sale, restoring at the same time any liens, encumbrances, or conflicting claims which were previously operative against him. * * *"

The rule is stated in 51 Am.Jur., Taxation § 1104, as follows:

"The effect of payment or tender of the amount necessary to redeem, by the owner or other persons entitled to redeem land from a tax sale, when made within the time limited by the statute and in accordance with the conditions and limitations imposed by the statute upon the exercise of the right to redeem, is to defeat the estate of the purchaser at the tax sale and *to leave the title and right to possession of the land where it would have been had no sale of taxes ever been made * * *"* (Emphasis supplied)

In Flemister v. Flemister, 83 Ga. 79, 9 S.E. 724 (1889), the Court, in holding that a tax certificate did not pass title to realty, stated:

"3. The next question is whether the officer's certificate of the tax-sale passed title to the purchaser, or was evidence that the devisee was without title. We think the certificate neither passed title nor was evidence that title had ceased to be where it was before. The statutes of the United States on the subject apply to this question, and are decisive of it. See Rev.St. §§ 3198, 3199. They contemplate that title is to pass, not by certificate, but by deed, and that the certificate is to be evidence of the right to a deed, or to the redemption money, but not of any direct right to the land, or possession thereof. Such a certificate is a step in acquiring land, but another step is necessary to arrive at ownership."

■ While 26 U.S.C. § 3704(b) provides for the execution of a deed to the purchaser if the property is not redeemed within one year after the sale, the statute is silent with respect to the execution of the deed in favor of a redemptioner. It is undisputed that Charlotte Samet never received a deed with respect to the subject property from the District Director or anyone else, except the quitclaim deed she received in 1959 from her husband, Theodore Samet. Under these circumstances, she is unable to point to any statute which gives her the right or title she is claiming. It would seem, therefore, from the statutory scheme set forth in the federal redemption statutes, that Congress never intended for a redemptioner to obtain the same rights as a distraint sale purchaser. Since the right of redemption from a tax sale exists only as permitted by statute, and can be exercised only as the statute prescribes, and since no provision is made for the execution of the deed to a redemptioner under distraint procedures, it must be concluded that a redemptioner only obtains an equitable lien for the money paid in effecting the redemption, plus interest, together with such other interest, lien or right pos-

3. 51 Am.Jur., Taxation § 1107; 85 C.J.S. Taxation § 886.

sessed in the property which qualified him a proper party to redeem within the purview of 26 U.S.C. § 3702(b) (1). In the instant case, this means that the effect of the redemption by Charlotte Samet was to (1) defeat the estate of the purchaser at the tax sale, and (2) leave the title to the land where it would have been had no sale taken place. The redemption entitles her, however, to an equitable lien on the property for $3,-600.00, the amount paid in redemption, plus interest at the rate of six per cent per annum since the date of payments, together with any interest she may have under the laws of the State of North Carolina in the event she survives her husband, Theodore Samet, and her husband either dies intestate or she dissents from his will.

The next argument advanced by the plaintiffs and the third-party defendants is that since the defendant violated its agreement to cancel of record all liens pertaining to the original assessments against Theodore Samet, the Court should either require a cancellation of the liens or declare subject property to be free of the liens. The basis for this contention is that on January 25, 1962, Charlotte Samet had paid the entire amount called for by the compromise agreement signed by her and accepted by the defendant, and that even in the collateral agreement signed by Theodore Samet alone, the defendant unconditionally agreed to release and cancel of record all liens pertaining to the original assessments upon acceptance of the "offer in compromise and the payments of all amounts called for therein." Under these circumstances, it is urged that both Theodore Samet and Charlotte Samet, as well as the third-party defendants, are entitled to a cancellation of the liens, or at least a declaration that the property is not subject to the liens, notwithstanding the fact that Theodore Samet had breached his promise in other respects before the amount called for in the original offer in compromise had been paid. While it is acknowledged that the defendant had a right, because of default on

the part of Theodore Samet, to disregard the amount of the offer in compromise and apply the amounts previously paid thereunder against the liability sought to be compromised, and to collect by distraint or suit the balance of such liability, it is reasoned that if the defendant is required to comply with its agreement and cancel the liens, the property in question would be free from the liens, at least temporarily, and that any reassessment of the liens against Theodore Samet would not affect the title of Charlotte Samet to the property. This argument is lacking in merit. In the first place, Charlotte Samet redeemed the property on April 22, 1955, and the offer in compromise was not submitted until August 31, 1956. It is difficult to understand how the redemption of the property and the offer to compromise the tax liability of Theodore Samet are related. Certainly, there is no evidence, or even a suggestion, that the offer in compromise in any way involved the title to the real estate in question. It was a totally unrelated and isolated transaction. At the time of the redemption, there was no way for Charlotte Samet to know that any offer in compromise would ever be made or accepted. In the second place, it was in the collateral agreement signed by Theodore Samet alone that the defendant agreed to cancel the liens upon the acceptance of the offer in compromise and the payment of the amounts called for therein. Before the payments called for in the original offer were completed, Theodore Samet had defaulted in the payment of a percentage of his annual income as called for in the collateral agreement which he alone signed. Under no circumstances does Charlotte Samet have a right to insist upon a cancellation of the liens against Theodore Samet in face of his admitted failure to comply with the terms of his agreement. All liens against Charlotte Samet have been cancelled of record, and the defendant has faithfully carried out and performed all agreements it made with her, except its promise to cancel its liens against Theodore Samet. As earlier indicated,.

since Theodore Samet defaulted in his agreement, there is no obligation on the part of the defendant to cancel its liens against him, and the action of the defendant in terminating the compromise agreement was entirely justified. Additionally, there is serious doubt as to whether Charlotte Samet would be benefited if the defendant is required to cancel, and then reassert, its liens against Theodore Samet. In United States v. Lane, 5 Cir., 303 F.2d 1 (1962), the Court was concerned with a situation where a taxpayer submitted an offer in compromise on Treasury Form 656–C, which provided for the payment of a portion of the offer in monthly installments. In a collateral agreement, the taxpayer offered as additional consideration for the acceptance of the offer a graduated percentage of his annual income over a period of years. The offer in compromise on Treasury Form 656–C contained a provision, identical in form to the provision of the offer in compromise here involved, which provided, in substance, that the Government might, in the event of default in the payment of any installment, disregard the amount of the offer and apply all the amounts previously paid thereunder against the amount of the liability sought to be compromised, and might, without notice of any kind, assess and collect by distraint or suit the balance of such liability. This default provision in the offer in compromise was incorporated in the collateral agreement by reference. Upon acceptance of the offer, the tax liens against the taxpayer were cancelled of record. The taxpayer defaulted in his annual payments, and as a result, the commissioner filed tax liens against the taxpayer covering the unsatisfied portion of original assessments. After stating "that an agreement compromising unpaid taxes is a contract and, consequently, * * * is governed by the rules applicable to contracts generally," the Court stated:

"We think that the Commissioner's undoubted right to recover the unpaid balance of the original liability carried with it the right to secure payment of this amount by reasserting the tax liens. Sections 6325(d) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6325(d) does not require a contrary conclusion. That section merely provides that a certificate of discharge of a tax lien is conclusive that the lien upon the property covered by the property is extinguished. The Government does not contend that the liens on the taxpayer's property were not extinguished when certificates of discharge were issued to the taxpayer in May, 1956. It claims merely that the liens could be revived upon revival of the obligation on which the liens were based. The Government's right to recover the unpaid balance of the original liability would be illusory indeed, if it was not also entitled to the security which the tax liens represented."

When Theodore Samet sought to quitclaim his interest in the property to Charlotte Samet on September 24, 1959, the liens against Theodore Samet were still attached to the property, and any attempted conveyance by Theodore Samet was subject to the liens. Once federal tax liens attach, they may only be removed in the manner provided by statute. This principle is stated in Metropolitan Life Insurance Company v. United States, 6 Cir., 107 F.2d 311 (1939) as follows:

"The Federal statutes create specific liens for taxes and as a corollary give a specific remedy for their removal and when such liens once attach, they may be lifted only as provided thereunder."

It is concluded that there is no statutory or other basis, either in law or in equity, for declaring subject property to be free of the liens of the defendant.

And finally, Charlotte Samet urges that the stipulated decisions of the Tax Court, being final judgments which may not now be reopened or questioned,

constitute a final and conclusive adjudication that Charlotte Samet was never a transferee of the assets of Theodore Samet, and that such adjudication relates back to the date of seizure. Under these circumstances, she contends that if the defendant desires to repudiate its agreement to cancel the liens against Theodore Samet, it must, as a matter of law, restore to her the fair market value of her separate property erroneously seized and sold, with interest. There is no legal precedent to justify this relief. In stipulating the Tax Court decisions, the defendant gave up its jeopardy transferee assessments against Theodore and Charlotte Samet in excess of $400,-000.00, and against Charlotte Samet in excess of $100,000.00. Theodore and Charlotte Samet in turn relinquished their claims for approximately $80,-000.00. In other words, as a part of the compromise settlement, the parties stipulated and agreed that Theodore and Charlotte Samet would relinquish their claim for approximately $80,000.00, and that said sum could be credited to the individual income tax liability of Theodore Samet, as a result of the defendant agreeing to concede no transferee liability. Both sides gave up asserted rights in exchange for valuable considerations. Both sides would have received exactly what they bargained for had Theodore Samet performed his agreement. If Charlotte Samet has any claim, either in law or in equity, it should be asserted against Theodore Samet, not the defendant. If Charlotte Samet was attempting to assist her husband by paying all or part of the $65,500.00 called for in the offer of compromise, and relinquishing her claim in the Tax Court, then it was her husband, rather than the defendant, that thwarted her efforts.

The property in question having appreciated in value since the distraint sale in 1954, the entire controversy relates to whether Charlotte Samet, and perhaps indirectly Theodore Samet, are entitled to the appreciated value of the property, or whether the defendant is entitled to apply the appreciated value to the admitted tax liability of Theodore Samet. The Court finds no difficulty, on the basis of the redemption statutes and the authorities herein referred to, in concluding that the defendant, both as a matter of law and equity, has the superior claim. This is especially true when it is conceded that Charlotte Samet has an equitable lien, superior to the lien of the defendant, for the $3,600.00 paid in redemption, plus interest from the date of payment at the rate of six per cent per annum, in addition to her inchoate dower right. This will completely restore her entire investment and protect every legitimate claim she has in the property.

Having concluded that the defendant has valid and subsisting liens on the subject property in the amount of $993,-512.51, plus interest, it necessarily follows that these liens are prior in time and superior to the liens and claims of the third-party defendants.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter.

2. The action of the defendant, United States of America, in terminating the compromise agreement with the plaintiffs, Theodore Samet and Charlotte Samet, and in refusing to release its federal tax liens arising from and pertaining to the income tax liability due and owing by Theodore Samet for the years 1941 to 1947, inclusive, was fully authorized by the terms of the compromise agreement.

3. Theodore Samet, having violated the compromise agreement before the final payment of $65,500.00 on January 25, 1962, such payment did not serve to satisfy the liens for income taxes due and owing by him for the years 1941 to 1947, inclusive, and did not serve to cut off the attachments of said liens to any property, or rights of property, whether real or personal, belonging to

him. Consequently, the tax liens of the defendant against the real property herein described, upon which there is currently due and owing a balance of $993,-512.51, plus interest, continued in full force and effect, and are enforceable against said property.

4. Charlotte Samet, in redeeming the property from the distraint sale, by payment on April 22, 1955, of the sum of $3,600.00 to the District Director of Internal Revenue, which was transmitted to the distraint sales purchaser, Lucy Swaringen, only obtained a first preferred equitable lien thereon for the amount of the redemption price of $3,-600.00, with interest thereon from the date of payment at the rate of six per cent per annum, together with her inchoate dower right or interest.

5. The purported transfer of the property from Theodore Samet to Charlotte Samet on September 24, 1959, having been made while the federal tax liens for the unpaid taxes due and owing by Theodore Samet for the years 1941 to 1947, inclusive, were outstanding, unsatisfied and enforceable, was subject to said liens.

6. Charlotte Samet is not entitled, either in law or in equity, to recover or obtain a refund of any sums heretofore collected by the defendant under the transferee assessments made against her as a transferee of the assets of Theodore Samet.

7. The liens and claims of the third-party defendants, Harry Rockwell, F. K. Wilkins, and GSW Hosiery Corporation, are inferior and subordinate to the tax liens of the defendant for the unpaid taxes due and owing by Theodore Samet for the years 1941 to 1947, inclusive.