**James A. MURRAY, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 541–85T.**

United States Claims Court.

June 2, 1988.

James A. Murray, Pueblo, Colo., pro se, for plaintiffs.

Elizabeth D. DePriest, Washington, D.C., with whom were Gerald B. Leedom, Mildred L. Seidman, and Acting Asst. Atty. Gen. William S. Rose, Jr., Washington, D.C., for defendant.

## OPINION

NETTESHEIM, Judge.

This case is before the court on cross-motions for summary judgment. The Federal Circuit vacated a judgment of dismissal entered by Senior Judge White upon his decision that the complaint failed to state the required elements of a taking claim. The remand instructed the court to adjudicate plaintiffs' claim that the Internal Revenue Service's extinguishment of plaintiffs' lien by refusing to allow them to redeem the encumbered property and conveying it to a superior lienholder constituted a taking under the fifth amendment to the U.S.

Constitution. *Murray v. United States,* 817 F.2d 1580 (Fed.Cir.1987), *vacating and remanding* 10 Cl.Ct. 696 (1986). After the case was fully briefed, it was transferred to this court on April 11, 1988. Supplemental briefing was ordered, followed by oral argument.[1]

### FACTS

The following facts are undisputed. During 1978 plaintiffs James A. Murray, Justin L. Murray, and Joan M. Murray ("plaintiffs") had a tenant farming arrangement with Donald A. Paul on plaintiffs' farm located near Buffalo, North Dakota. This arrangement provided that plaintiffs would receive 50 percent of the yearly harvest profits. Plaintiffs' share of the 1978 harvest was approximately $59,-000. However, these monies were utilized by Mr. Paul for personal, farming, and business expenses.

In recognition of his indebtedness to plaintiffs, on December 20, 1978, Mr. Paul executed a note payable to plaintiffs in the amount of $59,000, compounded at 8–percent interest from March 1, 1979, due on July 1, 1979. The note was secured by a short-term mortgage with plaintiffs as mortgagees on the realty of Mr. Paul's restaurant-nightclub business known as Fireside, Inc. ("Fireside"). The mortgage on Fireside was executed by Mr. Paul as President on December 20, 1978, and recorded in the Register of Deeds office for Cass County, North Dakota, on that date.

Fireside, incorporated under the laws of North Dakota, was owned by Mr. Paul and Charles Wellentin. Mr. Paul contributed $40,000 and Mr. Wellentin contributed $10,-000 to the establishment of Fireside in January 1976. In turn, Mr. Paul received 40,-000 and Mr. Wellentin, 10,000 shares of stock, at a par value of $1.00 per share. Fireside's 1978 Annual Report for the year ending June 30, 1978, was filed on December 14, 1978, and signed by Mr. Paul as President. It listed Messrs. Paul and Wel-

lentin as the sole directors—Mr. Paul serving as President and Vice–President and Mr. Wellentin, as Secretary and Treasurer.

At the time Mr. Paul executed the mortgage to plaintiffs, Fireside already was subject to a first mortgage in the amount of approximately $92,000 held by the Casselton State Bank and recorded on February 9, 1976. Prior tax liens also existed in favor of the Internal Revenue Service (the "IRS") totalling approximately $25,000, which had been recorded between October 27, 1977, and December 20, 1978.

The IRS seized Fireside's real estate and personal property on April 18, 1979, for failure to remit federal income taxes. On June 8, 1979, after notice to Fireside, the real property was sold by auction for $301.84, to the United States, as the sole bidder. An IRS District Director's Deed memorializing the sale was executed on November 30, 1979.

On August 13 and September 9, 1979, plaintiffs tendered a check in the amount of $320.00 in order to redeem the property. The IRS denied plaintiffs' request by letters dated August 23 and October 4, 1979. In its August 23, 1979 denial, the IRS stated:

> As he [IRS Officer Gordon Sorum] informed you on July 9, 1979, when you came to this office, there was [sic] some questions as to the validity of the mortgage you hold against the Fireside property since it was executed in [sic] behalf of one officer of the Corporation for a personal debt. . . .

Letter dated August 23, 1979, from Joyce L. Gasing, IRS District Group Manager, to James A. Murray. In its October 4, 1979 letter, the IRS also took the position that plaintiffs' lien was not valid. The property was not redeemed within 120 days after sale, thereby exhausting the statutory right of redemption. On March 5, 1980, the United States conveyed Fireside's real property for $301.84 to the Casselton State Bank, holder of the first mortgage.

---

**1.** Although plaintiffs moved for summary judgment complete, including damages, defendant cross-moved on liability, *i.e.,* whether plaintiffs held a valid lien at the time that it was extin-guished. This opinion treats the issue of liability alone, and it should be noted that the Federal Circuit did not rule on the amount of any damages.

Two suits to obtain Fireside or damages for the refusal to allow plaintiffs to redeem the property were filed by one or more plaintiffs in federal district court. In *Murray v. United States*, 520 F.Supp. 1207 (D.N.D.1981), *aff'd*, 686 F.2d 1320 (8th Cir. 1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983), plaintiffs unsuccessfully sought to establish a waiver of sovereign immunity and, hence, subject matter jurisdiction in federal court on the theory that mandamus was available to quiet title to Fireside or, alternatively, on the theory that a suit for damages could be maintained under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (1982). Subsequently, in *Murray v. United States*, 585 F.Supp. 543 (D.N.D.), *aff'd*, 751 F.2d 271 (8th Cir.1984) (per curiam), plaintiffs' reliance on the federal mandamus statute, 28 U.S.C. § 1361 (1982), was rejected for failure to state a claim.

Plaintiffs filed their complaint in this court on September 17, 1985. On September 11, 1986, Senior Judge White dismissed the complaint because the statute under which the IRS acted did not mandate the payment of money; because no violation of the due process clause was stated; because plaintiffs as inferior lienholders did not own the Fireside property and therefore did not have a property interest that could be taken; and because the actions of the IRS, at best, only prevented plaintiffs from exercising their lien, but did not amount to a taking. *Murray*, 10 Cl.Ct. at 698–99.

## DISCUSSION

On appeal the Federal Circuit characterized plaintiffs' property interest under the laws of North Dakota as a lien on the property, in contrast to title to the real estate, and stated that the fifth amendment recognizes a mortgagee's lien as a property interest. *Murray*, 817 F.2d at 1583–84. Plaintiffs contended that "because their mortgage was 'destroyed' when the IRS refused to allow them to redeem the property, it was taken by the government...."

*Id.* at 1583. On the basis that taking jurisprudence has recognized the destruction of materialmen's liens as compensable property and plaintiffs' mortgage is the same type of interest, the appellate court held that by failing to allow plaintiffs to redeem the mortgaged property, the IRS extinguished their lien. *Id.* Having concluded that plaintiffs had stated "all of the required elements of a taking claim," *id.* at 1584, the Federal Circuit remanded the case with instructions to adjudicate that claim. The Federal Circuit has established the law of the case, and the statutory scheme under which plaintiffs' claim arose is set out only to provide context for the arguments now urged.

A delinquent taxpayer's real property, as well as other property rights, can be seized by the IRS pursuant to section 6331 of the Internal Revenue Code of 1954, 26 U.S.C. § 6331 (1976) (the "I.R.C."). Seizure is permitted after a 10–day period following notice and demand for payment upon the taxpayer-owner. I.R.C. § 6335(b). Once seizure has taken place, the IRS must issue written public notice stating the sum demanded in satisfaction of the IRS' tax lien and a description, with reasonable certainty, of the seized property. *Id.* There is no requirement in section 6335 that notice of seizure must be given to any lienholders. *See* I.R.C. § 6335(a).

If the property owner does not pay the tax deficiency, the IRS is authorized to hold a public sale in the county in which the property is located "not less than 10 days nor more than 40 days from the time of giving public notice [of the sale]." I.R.C. § 6335(d). Notification can be given by "publish[ing] [notice] in some newspaper published or generally circulated within the county wherein the seizure is made" or by posted notice in the absence of such a newspaper.[2] § 6335(b). The notice must "specify the property to be sold and the time, place, manner, and conditions, of the sale." *Id.*

---

**2.** If no newspaper is published or generally circulated in the county, then notice must be posted at the nearest Post Office location to where the seizure was made and in at least two other public places. I.R.C. § 6335(b).

Upon a sale of the property pursuant to section 6335, the IRS gives the purchasers a certificate of sale. I.R.C. § 6338(a). If the United States purchases the property, the IRS executes a deed which is recorded in the proper registry of deeds. § 6338(c). A certificate of sale or deed executed pursuant to section 6338 discharges the property from all liens junior to the tax lien of the United States. § 6339(c); *Commercial Mortgage & Fin. Co. v. Woodcock Constr. Co.*, 51 Ill.App.2d 61, 200 N.E.2d 923 (1964); *see United States v. White Bear Brewing Co.*, 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871 (per curiam).

The property can be redeemed before or after a tax sale. I.R.C. § 6337(a), (b). Pertinent to this case is the provision governing post-sale redemption, I.R.C. § 6337(b)(1):

The owners of any real property sold as provided in section 6335, their heirs, executors, or administrators, or any person having any interest therein, or a lien thereon, or any person in their behalf, shall be permitted to redeem the property sold, or any particular tract of such property, at any time within 120 days after the sale thereof.

Redemption may be made in an amount equal to the outstanding tax lien, plus interest, at the rate of 20 percent per annum. § 6337(b)(2). The effect of redemption is to restore the property to its owner free only of the United States' tax lien and otherwise fully subject to all prior liens. *Samet v. United States*, 242 F.Supp. 214, 222–23 (M.D.N.C.1965).

Plaintiffs in the case at bar were not allowed to redeem Fireside. After the 120–day period for redemption expired, the IRS sold the property to the first mortgagee. Thus, plaintiffs' subsequent lien was extinguished pursuant to I.R.C. § 6339(c).

With principal reliance on *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960), the Federal Circuit determined that there was "no difference, for Fifth Amendment [taking] purposes, between [the] Murrays' mortgage lien and the materialmens' liens at issue in *Armstrong*." 817 F.2d at 1583. In *Armstrong*

the United States exercised an option to take title to uncompleted boats and materials from government shipbuilding companies which had defaulted under their contract. 364 U.S. at 41–42, 80 S.Ct. at 1565. Petitioners, holding materialmen's liens that had attached under state law, sought compensation for the extinguishment of their liens as a taking under the fifth amendment. *Id.* at 44–46, 80 S.Ct. at 1567. Holding that this action constituted a fifth amendment taking, the Supreme Court stated:

The total destruction by the Government of all value of these liens, which constitute compensable property, has every possible element of a Fifth Amendment "taking" and is not a mere "consequential incidence" of a valid regulatory measure. Before the liens were destroyed, the lienholders admittedly had compensable property. Immediately afterwards, they had none. This was not because their property vanished into thin air. It was because the Government for its own advantage destroyed the value of the liens....

*Id.* at 48, 80 S.Ct. at 1568–69. It appears that although plaintiffs' lien in this case was extinguished, the extinguishment occurred as a result of the tax sale, not the IRS' refusal to allow plaintiffs to redeem the property. However, the issues for decision on remand are whether defendant can contest the validity of plaintiffs' lien and, if so, what the standards are for establishing a valid lien.

■ 1. Defendant argues that plaintiffs' mortgage is invalid as an *ultra vires* act of Mr. Paul as a shareholder in pledging the property of Fireside to secure his personal debt. Plaintiffs rejoin that defendant has no standing to question the validity of the mortgage because the Government was not a party to the transaction between plaintiffs and Mr. Paul and has not been damaged by plaintiffs' attempt to redeem.

Defendant's right to challenge the mortgage does not derive from any involvement in the underlying transaction between plaintiffs and Mr. Paul. I.R.C. § 6337(b)(1)

authorizes the IRS to provide rules for redemption by providing that "any person having ... a lien" on real property sold under section 6335 "shall be permitted to redeem the property sold" within 120 days after the tax sale. As the federal district court for North Dakota explained in plaintiffs' earlier litigation seeking to compel reconveyance of Fireside to them, "[a] determination must be made by the District Director, or his agent, whether the person who is attempting to redeem is in fact a person entitled under the statute [section 6337] to redeem." 585 F.Supp. at 546; *see also Samet*, 242 F.Supp. at 221–22. Defendant establishes standing in this case by statute, *see Bull v. United States*, 295 U.S. 247, 259–60, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935), and need not establish that it suffered an injury in fact.

■ 2. Since the IRS had the statutory right to determine the persons who qualify to redeem, the issue becomes whether plaintiffs held a valid lien. State law controls legal interests in real property. *See United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985); *Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). Former section 10–07–02 of the North Dakota Century Code provided:

*Execution of instruments when bylaw silent.* In the absence of any provision in the bylaws regulating the execution and acknowledgment of conveyances, transfers, assignments, releases, satisfactions, or other instruments affecting liens upon, titles to, or interests in real estate, the president or secretary of any corporation may execute and acknowledge such instruments on its behalf when authorized so to do by a resolution of the board of directors. A United States corporation which is an agency or instrumentality of the federal government may authorize, by resolution of its board of directors, any one or more of its officers or any one or more persons severally or jointly to execute and acknowledge such instruments on its behalf.

N.D.Cent.Code § 10–07–02 (1976). Defendant then points to the absence of a provision specifically directed to executing instruments affecting real property in Fireside's Bylaws to establish that Mr. Paul's execution of the mortgage, without the authority of a board resolution, was a nullity. Since section 10–07–02 has been repealed, this court asked the parties to brief the effect of the current state law.

In 1983 North Dakota abolished chapter 10–07, entitled "Transfers of Real Estate and Interests Therein," and enacted a replacement section, 47–10–05.1, codified at chapter 47–10, *see* 1983 N.D.Sess.Laws 502, § 1:

*Presumption of corporate authority of officers—Application.* An officer of any foreign or domestic corporation is presumed to have the power and authority to execute and acknowledge, in its behalf, any instrument granting, conveying, or otherwise affecting any interest in or lien upon any property of the corporation, including contracts, mortgages, deeds, plats, replats, easements, rights of way, options, dedications, restrictions, releases, and satisfactions. *Any such instrument executed by an officer of the corporation prior to July 1, 1983, and otherwise proper, is valid and effective.*

N.D.Cent.Code § 47–10–05.1 (1985) (emphasis added). This section had the effect of retroactively broadening the presumption of corporate authority. *See Brend v. Dome Development, Ltd.*, 418 N.W.2d 610, 613 (1988). The new law also repealed former chapter 47–10, but did so prospectively. *See* 1983 N.D.Sess.Laws 502, § 4. Thus, the statutory requirement that execution of a conveyance of interest in real estate by a corporation's president must be approved by a resolution of its board was in effect when Mr. Paul attempted to convey an interest in Fireside. However, even if section 10–07–02 were not the applicable law, any action undertaken by Mr. Paul must be in accordance with the other provisions of Fireside's Bylaws, according to section 47–10–05.1, which reaches this conveyance retroactively.

Fireside has the power to "purchase ... deal in, manage, mortgage or otherwise ...

transfer" real property. Fireside Articles of Incorporation, art. III. Article VI, § 2 of Fireside's Bylaws provides that "[a]ll bonds, notes and other evidences of indebtedness ... shall be signed by such persons the directors may [by] ... resolution prescribe." Although North Dakota law permits the operation of a corporation with only one director, *see* N.D.Cent.Code § 10–19.1–55, and "[a]ny.number of offices or functions ... may be held or exercised by the same person," Fireside's Bylaws prescribe that the Board of .Directors must consist of "not less than 3 nor more than 15 directors." Fireside Bylaws, art. II, § 1. Thus, before any commitment representing indebtedness could be executed on behalf of the corporation, a resolution was required by the directors.

Defendant proffered the affidavit of Mr. Paul which states that in 1978 only Mr. Wellentin and he served on the board and that he "did not inform Mr. Wellentin about [plaintiffs'] ... request or seek his approval of the transaction." Affidavit of Donald A. Paul, Oct. 27, 1987, ¶¶ 6, 8. Moreover, as noted above, the Annual Report for Fireside, Inc., listed Charles Wellentin as the only director or officer other than Donald Paul as of June 30, 1978. Regardless of whether the corporation's Annual Report was current as of December 20, 1978, Mr. Paul has averred that Mr. Wellentin was a director in 1978. The only evidence plaintiffs have offered to contradict Mr. Paul's affidavit is plaintiff James A. Murray's unsworn representation that Mr. Paul "told me he was the sole stockholder, and therefore, it was not necessary to inform Mr. Wellentin or seek his approv-

al." .Plfs' Br. filed Dec. 21, 1987, at 9. This response is facially defective since it is not in the form of an affidavit. *Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1404 (Fed.Cir.1984); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1150 (Fed.Cir.1983); *see also Southern Rambler Sales, Inc. v. American Motors Corp.*, 375 F.2d 932, 937 (5th Cir.), *cert. denied*, 389 U.S. 852, 88 S.Ct. 105, 19 L.Ed. 2d 92 (1967) (" 'Meet these affidavit facts or judicially die....' "); *Royal Indemn. Co. v. United States*, 178 Ct.Cl. 46, 51, 371 F.2d 462, 465, *cert. denied*, 381 U.S. 833, 88 S.Ct. 33, 19 L.Ed.2d 93 (1967) (if Government has affidavits negating contracting authority, plaintiff must respond with affidavits). Whether hearsay representations in affidavits may be evidence that will defeat summary judgment, *see C & L Constr. Co. v. United States*, 6 Cl.Ct. 791, 803 n. 5 (1985), plaintiffs' representation was not in an affidavit. As the Supreme Court recently explained in *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), "Rule 56(e) [the Federal Rules' counterpart to RUSCC 56(f) ] permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere . pleadings themselves...." [3]

Plaintiffs also proffer that there is "no showing on December 20, 1978 Mr. Wellentin was a stockholder or director." Plfs' Br. filed Apr. 11, 1988, at 4. In contending that Mr. Wellentin had to have been a shareholder, plaintiffs miss the point. The North Dakota State Code does not mandate, *see* N.D.Cent.Code § 10–19.1–34 (no

---

**3.** Pursuant to RUSCC 56(g), defendant had requested additional time to take discovery, specifically to depose Fireside's officers, in order to oppose plaintiffs' motion for summary judgment. Defendant also indicated that it would notice Mr. Paul's deposition. On this basis plaintiffs may have relied on this forthcoming opportunity to examine Mr. Paul under oath and foreswore taking their own discovery of him. Apparently, defendant obtained Mr. Paul's affidavit in lieu of his deposition. Although plaintiffs neither moved pursuant to Rule 56(g) for leave to depose Mr. Paul after defendant submitted his affidavit nor submitted an affidavit requesting discovery, *Sweats Fashions, Inc. v.*

*Pannill Knitting Co.*, 833 F.2d 1560, 1566–67 (Fed.Cir.1987); *see also Dunkin' Donuts of America, Inc. v. Metallurgical Exoproducts Corp.*, 840 F.2d 917 (Fed.Cir.1988), the court inquired of plaintiffs at a status conference held on April 18, 1988, what discovery, if any, they would adduce if they were allowed additional discovery. Plaintiffs, through Mr. Murray, responded that discovery would not be germane to any issue. *See* Order entered on Apr. 18, 1988. It should be noted that although plaintiffs proceeded *pro se,* Mr. Murray is an attorney admitted to practice in the State of Colorado.

qualification for directors except that director must be individual), nor do the Fireside Bylaws require, *see* Fireside Bylaws, art. II, §§ 1–10, that only shareholders can be directors.

In light of plaintiffs' failure to rebut defendant's evidence establishing their entitlement to summary judgment, their claim must fail.[4]

### CONCLUSION

Plaintiffs' motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted. The Clerk of the Court shall dismiss the complaint.

---

**4.** Defendant also argues correctly that the mortgage was not acknowledged properly on behalf of Fireside.